. . Schmidt versus creed. Morning morning is Pringle my name is Nathan Pringle I represent the appellant this matter Mr Michael Schmidt. Rather than go over the facts of the case I'll just summarize by saying that the pertinent facts are very straightforward in this matter. They are that excuse me a sec would you like rebuttal time. Oh yes I'm sorry I request five minutes please. Okay. Thank you. The three pertinent facts are these that Mr. Schmidt was had a property right in his in his continued employment. That was derived from a state statute of several state statutes won the Civil Service Act and also the statute that permitted the collective bargaining permitted his union have collective bargaining rights on his behalf. His union had a provision which provided for just cause before suspension or termination. The other fact that is not in dispute is that he was suspended. He was suspended for an extended period of time pending the investigation of the alleged misconduct. And the third probably the most significant fact is that that is not disputed is that he was not given a predetermination hearing before he was suspended. Now the collective bargaining agreement provided for post deprivation remedy and he grieved it and turned out he was successful. But correct. I guess the question partially success. So I guess the question is to the to what extent is that post deprivation remedy sufficient satisfied due process in this case. My reading of the case law in this matter which includes this court's decision. This court's decision in. Sorry. D versus Burl Dunmore Dunmore which cited the border region versus Roth cited Laudermill and and other related cases provides that the what is paramount is that there be a requirement of a predetermination before a deprivation except when there is an emergency. In this case there was no emergency under the circumstances. And that's what we also believe is very straightforward in this matter which is what the law is. Who decides if there is an emergency is the jury when you have conflicting versions of why there may or may not have been an emergency. Is that a jury issue. We believe that's a question of fact and that should go to the jury. And the jury has not yet dealt with that right. Exactly. So if you should prevail we'd have to remand this case. Yes exactly. And if there if the judge I'm not sure the judge would find that there is a question of whether there's an emergency. But if the appellees want to argue that there is a question of whether or not there is an emergency that question should be presented to the jury. Your Honor this case is so straightforward that's basically the argument the law is very clear in this matter. There must be a predetermination hearing before there is a deprivation unless there is a emergency or some extraordinarily unusual circumstances. That is not what happened here. There was no explanation as to what the extraordinary or emergency circumstances were. The only thing presented by the appellees was that they no longer trusted him because that under the circumstances we don't believe that that amount to a emergency mainly because the alleged act took place on July 15th. He was suspended three days later before he was actually suspended. The superintendent reviewed the matter. He received a report. He submitted that report to the personnel office. The personnel office met with him and his and his other other capital police officials. They took the time to deliberate on that. And rather than take the time to discuss the matter and have a predetermination hearing with the appellant they just suspended him. Now I gather that he had been previously disciplined for behavior demonstrating a lack of professional judgment in the eyes of the of the department. And that they were saying you know we just because of past history we just couldn't keep him on the street anymore. That he's you know he might do something that would be much worse than this. Your position is either that's not sufficient to to qualify as as the necessity to take fast action or that it's an issue of fact and should go to the jury. It's absolutely an issue of fact your honor. In this under these circumstances this is not a renegade police officer who was shooting people was endangering the public. He was flouting rules on a regular basis and this was his last and final the last final straw. This is a situation where he was presented with a request by a fellow police officer to file a criminal complaint. I'm not sure whether he exercised the best judgment in this matter. But if any other member of the public presents him with a request to file a criminal complaint he does it. He did it in this matter. His superiors were upset with who he filed the complaint against namely them and they suspended him. Do we have an issue of qualified immunity here. Your honor. Is it the law is really unclear as to how we proceed in these circumstances. Would he be entitled to qualified defense on the initial motion for summary judgment. The Pelley's filed asserted qualified immunity. The judge ruled that there was no qualified immunity because he found that there was a deprivation of the Fourth Amendment rights 14th Amendment rights. But on reconsideration he did not address that. So procedurally we believe that that was never and we did not appeal that that was never appealed so that that is not before this court. However in the event that this court rules that the entire decision should be reversed and qualified immunity should be an issue that again should be presented to the jury whether or not this individual is entitled. Good. Any other questions. Good. Thank you. Thank you very much. Mr. Hopkirk. May it please the court. My name is Howard Hopkirk. I am a senior deputy attorney general with the Pennsylvania Office of Attorney General. I represent the Pelley's in this case. Officials employed by the Pennsylvania Department of General Services and the Pennsylvania Capitol Police. The decision of the district court should be affirmed because under this court's prior decisions in Dykes v. SEPTA and Jackson versus Temple University. Officer Schmitt's due process rights were not violated since there was an adequate grievance and arbitration procedure under the collective bargaining agreement. But the issue of a predetermination hearing was never made in those cases. Right. The issue was never raised. Well, that's correct. I think a couple of things. First, there's no indication that there was any type of pre-termination hearing. Those cases involved people who were terminated for drug use. And it was a very, very quick type of procedure. Okay. So shouldn't in the three days that passed, because there was not such an emergent situation that they couldn't wait three days. In those three days, couldn't they have held a very simple hearing to say, this is what you're charged with. What is your explanation? Well, there are two answers to that. First, the major need for the immediate suspension was his position as a police officer and the issue of trust in the community. It would be similar to the Homar case as far as the interest. I do concede that there wasn't the criminal prosecution or a criminal complaint having been issued, which would give more reliability to that initial decision. However, on top of that, there was the question of the bias of the decision makers. And instead of having a pre-suspension type of Loudermill type hearing, before that they recognized that their position in the case made them inherently biased. And so there's a procedure under state law to direct the investigation to the Inspector General's office. So if you look at the whole Matthews-Eldridge balancing equation, sometimes in order to have a more fair result, it is proper to have a delay. But if you're going to take that delay, during that period of delay, cannot a very simple pre-termination hearing be held? I mean, certainly the emergency isn't so great that you can't go through the steps to create a nonpartisan, unprejudiced board. But having no need to act immediately, having the situation where you can wait a few days, shouldn't there be an opportunity in those few days for the petitioner to know what's going on? And if we'll look at the recent problem with the Department of Labor, that if there is a simple explanation that will defuse this termination, shouldn't that opportunity be given? Well, ideally, it might be better if it did. But I think here you have an unusual set of circumstances. And the question is whether with the grievance and arbitration procedure, which did exist together with the totality of the circumstances, whether that provided Mr. Schmidt with due process. What is it that the court said in Dykes? What do you understand? You said your primary reliance is on Dykes. What does Dykes tell us about the necessity of pre-deprivation hearing or pre-deprivation process? It doesn't expressly address that, but it does say that the grievance and arbitration procedure can substitute for due process. And I think if you look at this case and you look at the different factors in the balancing test, it doesn't make sense to say that the grievance procedures in Dykes were sufficient, but in this case they weren't. We don't know in Dykes whether there was any pre-deprivation process or not. It's just not discussed because they're not complaining about it, right? I'll say that was a case which was dismissed on a motion to dismiss, and the facts alleged in the complaint don't say anything about that. It just says that he was terminated and he wasn't given that. When I read it, I infer that he just wasn't given anything, and then he filed a grievance and that that satisfied due process. That's how I have interpreted it. Okay. You would agree with me that this court in Dees did directly and expressly address the necessity of pre-deprivation process, right? Yes. What do you do with Dees? I distinguish it, I suppose. Dees, though, doesn't have – first of all, that's a termination decision. I think the fact that this is a suspension and it's a suspension of limited time under state law, so what's happening – Without pay, right? Suspension without pay. Without pay, but for a limited time. That is certainly – while there might be – there's certainly going to be a burden on the individual, it's much less than when you're talking about a permanent termination. So that's one thing when you're looking at Matthews, that that's a difference between the termination cases. But if we go back to Loudermill and Gilbert v. Homer, it seems to be – it seems that the Supreme Court says that some kind of pre-termination proceeding can be very informal with notice and an opportunity to explain is required unless it's impractical or unless there's a need to act quickly. And so if there's an issue of fact about the need to act quickly or the impracticality, doesn't this have to go back? Well, I mean, I think, you know, first, the issue regarding the bias of the decision-makers and the need to refer it to an impartial decision-maker is something which is not in dispute. I don't think there's any way that a jury could, you know, find that they weren't biased and they could have held a hearing. So I think, you know, that's, you know, a major thing combined with the type of position which this officer had. I mean, you get into a whole bunch of issues of, well, who would this impartial decision-maker be? The case, as you have it, was initially referred to Human Resources, and they said, well, we can't make this decision either. It's going to have to go to the Inspector General. And while, you know, three days, I don't think in the grand scheme of things that three days was a long time, and there was no – I don't think there's any question that he was continuing to work during this time and that he was suspended to get him, you know, off the street, as it would be. I think that the grievance arbitration procedure, in this case and other cases, it advances the correctness of the result. And so I think when you weigh that against the possible benefit of any type of pre-suspension biased hearing in this case, that that would have – you know, there might be – there's probably some value in that, but when you counter-weigh it against the value of getting the correct result, I think the cases – Homar and – they do talk about delay being justified, especially when you don't want to rush to judgment and you want to avoid a biased decision. But that doesn't – it doesn't necessarily mean that you can't have that informal predetermination notice in hearing. You can have the final hearing later on. But, I mean, I think – And it's clear that a post-deprivation hearing could provide, or in fact does provide, sufficient due process. But, I mean, if the government's put in the position where they're told, well, you have to have some type of hearing, even if it's a kangaroo court type of hearing, you just go ahead and do that, as opposed to in this case where it looks like the people realize that the fair thing to do was to not act as quickly and to not rush to judgment. And because the grievance procedure was there, Officer Schmidt was able to get recourse in a relatively short period of time. Taking the time to find an impartial board, taking the three days, isn't there also, then, an indication that a slightly additional amount of time can be taken to have a very informal predetermination hearing? If you can take three days, why can't you take three and a half days? Well, one answer would be that there was a need to have Officer Schmidt taken away from his duties. Okay, but it was not such an immediate need that you couldn't wait three days. Why, then, couldn't you wait three and a half days? You know, I don't know exactly why it transpired in exactly three days. I do know that most of the time was over the weekend where, you know, people might not have been, everyone might not have been available. And also, since it was referred to Human Resources for them to do something, and then they decided, well, we can't do this, it has to go to the Inspector General. And that's something which is provided under state law. And although Mr. Schmidt, he does have these property interests under state law and his employment, the parameters of those rights are also defined to some extent by state law. And the fact that state law provides this reasonable procedure to make the process less biased and to have an independent result, to me, that furthers the due process concerns. If we should hold that unless, except in emergency situations, where something has to be done immediately, not wait for three days, but in situations where you can wait for three days, that an informal predetermination that we need to follow D, that an informal predetermination was necessary, what effect will that have upon the practices and procedures of the employment policies? Well, I think, you know, probably in most cases it won't have an effect because the general practice is to give that type of ladder mill hearing before someone was suspended. In cases like this, which are more unusual, where it will tie the hands of people and it seems to me will encourage people rushing to judgment and, okay, we have to hold a hearing, okay, we heard you, you're suspended now, you know, because their mind is already made up and that was the problem here. And I think due process is flexible enough that it has to be able to consider those types of situations. Are there other circuits that have held a predetermination hearing as necessary in a collective bargaining situation? Well, I know the Ninth Circuit followed Jackson and was referred to in Dykes, but beyond that I didn't do anything. In the Second Circuit, although I can't find the name of the case here. And just what has been the practice of the state, of the Commonwealth, with respect to these matters where there are collective bargaining agreements? Do they typically not hold any kind of informal hearing and just deal with it? No, under the collective bargaining agreement he could only be suspended for And he, under the grievance procedure, he was, in our opinion, made whole, which is another question as to what damages he would have after this. Because, you know, if you're talking about just the loss from not being given a hearing, that seems to have been taken care of by the grievance and arbitration procedure. And which brings up another point regarding the efficiency of having these things decided through grievance and arbitration, which has been decided, you know, a couple years ago, as opposed to going through a court process, which, you know, at this point if you were to reverse, you know, we're talking about, you know, a couple more years before you have a resolution. And does that really, you know, you start off with saying three days is too long, but then you end up having a five-year process if you don't let these things be decided through the grievance procedure. And you also discourage the Commonwealth from entering these agreements if they're going to end up having to go to court anyway. And my time's exhausted. I think the Court sees that in any case these issues are very confusing and have not really been fleshed out or decided. So even if as a rule you rule against us, our defendants are entitled to qualified  Thank you. Sotomayor. Can we decide that issue before us? That issue is before you because the other side appealed the grant of summary judgment, and you have the right to we didn't have the right to appeal because we were not aggrieved, but the Court has the right to affirm on any basis that's in the record. And it was presented to the trial court. Thank you. Thank you very much. Mr. Hopker. Mr. Pringle. With respect to the practices of the Commonwealth of Pennsylvania, since the decision in Laudermill, it's been pretty much universal that all employees who have collective bargaining rights and are giving predetermination hearings before any action is taken against them. The implications of this case is profound in that many employees do not have collective bargaining rights but do have civil service rights. And the application of this case to employees who have civil service rights, this case would affect them in that if the Commonwealth has its way, they could avoid the predetermination hearing and wait for the civil service hearing or wait for the arbitration hearing, thereby pretty much eradicating any due process rights that they may have. This will not have, unlike what Mr. Hopker says, this will not have a devastating effect on the operation of the Commonwealth. This is the normal practice is for the Commonwealth to give predetermination rights. This is an aberration. And how does it work in the civil service context? In the civil service context, individuals are given predetermination hearings but they have the right to, let's say, an individual suspended. The person would be given a predetermination hearing and then after the hearing, let's say, the person was suspended. If that person wants to appeal, they have, I forgot the time limits, 15 or 20 days to file an appeal with the Civil Service Commission and they would have a full hearing before the Civil Service Commission. Any other questions? No? Thank you, Mr. Pringle. Thank you very much. The case was very well argued. We will take the matter under advisement.